## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAWN WILLIAMS, individually, as natural parent and next friend of Y.W., C.W., J.B., and N.D., minors, and on behalf of all others similarly situated, | **Case No. 2:26-cv-453**<br><br>**CLASS ACTION COMPLAINT** |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| THE DEVEREUX FOUNDATION D/B/A DEVEREUX ADVANCED BEHAVIORAL HEALTH, | |
| Defendant. | |

Plaintiff Dawn Williams, individually, as natural parent and next friend of Y.W., C.W., J.B., and N.D., minors, and on behalf of all others similarly situated, brings this Class Action Complaint and alleges the following against defendant The Devereux Foundation d/b/a Devereux Advanced Behavioral Health  ("Devereux" or "Defendant"), based upon personal knowledge with respect to Plaintiff and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

## <u>NATURE OF THE ACTION</u>

1.    Plaintiff brings this class action against Devereux for its failure to properly secure Plaintiff's and Class Members' personally identifiable information ("PII") and personal health information ("PHI").

2.    Devereux failed to comply with industry standards to protect information systems that contain PII and PHI. Plaintiff seeks, among other things, orders requiring Devereux to fully and accurately disclose the nature of the information that has been compromised and to adopt

sufficient security practices and safeguards to prevent incidents like the disclosure (the "Data Breach") in the future.

3.    Devereux operates behavioral health centers in Arizona, California, Connecticut, Delaware, Florida, Georgia, Massachusetts, New Jersey, New York, Pennsylvania, Rhode Island, and Texas.[1]

4.    On November 9, 2025, Devereux identified suspicious activity within its information technology network. On November 28, 2025, a ransomware group publicly claimed that it had obtained from Devereux's sensitive data and that it would leak the data if Devereaux did not pay within 10 days (the "Data Breach").

5.    Devereux subsequently disclosed that the data may have included:

- Names, addresses, dates of birth, and other contact information and personally identifiable information;

- Medical record numbers and/or health insurance information;

- Diagnosis and treatment information; and

- Social Security numbers, prescription information, and lab results.

6.    As a health care provider and a keeper of sensitive mental health data and notes, Devereux knowingly obtained sensitive PII and PHI and had a resulting duty to securely maintain that information in confidence. Plaintiff and Class Members would not have provided their PII and PHI to Devereux if they had known that Devereux would not ensure that it used adequate security measures.

---

[1] Devereux, Devereux Centers, https://www.devereux.org/site/SPageServer/?pagename=centers (last visited on Jan. 22, 2026).

7.      Plaintiff seeks to remedy these harms individually and on behalf of all other similarly situated individuals whose PII and/or PHI were exposed in the Data Breach. Plaintiff seek remedies including compensation for time spent responding to the Data Breach and other types of harm, free credit monitoring and identity theft insurance, and injunctive relief, including substantial improvements to Devereux's data security policies and practices.

## PARTIES

8.      Plaintiff Dawn Williams and her four minor children are residents of North Versailles, Pennsylvania. Her four minor children have recently been treated at a Devereux facility.

9.      Defendant The Devereux Foundation d/b/a Devereux Advanced Behavioral Health is a Pennsylvania corporation, with its principal place of business in Villanova, Pennsylvania.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Minimal diversity exists because a substantial portion of putative class members reside outside the Commonwealth of Pennsylvania. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

11.     This Court has general personal jurisdiction over Devereux because it is headquartered in and maintains its principal place of business in this District. *See* 28 U.S.C. 1391(a). Devereux is authorized to and regularly conducts business in Pennsylvania.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District, a substantial part of the events giving rise to this action occurred in this District, and Defendant is subject to the Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

### The Data Breach

13.     Devereux provides children and adults with behavioral healthcare services related to autism, intellectual and developmental disabilities, specialty mental health, education, and foster care.[2]

14.     Devereux describes itself as "one of the nation's largest nonprofit organizations providing services, insight and leadership in the evolving field of behavioral healthcare." In 2023, Devereux's revenue was close to $500 million.[3]

15.     Due to the nature of the services it provides, Devereux acquires and electronically stores PII and PHI. Devereux was therefore required to ensure that PII and PHI were not disclosed or disseminated to unauthorized third parties without Plaintiff's and Class Members' express written consent.

16.     On November 28, 2025, a ransomware group, The Gentlemen, publicly claimed that it had obtained Devereux's sensitive data. It started a countdown and threatened to leak

---

[2] Devereux, About Devereux, https://www.devereux.org/site/SPageServer/?pagename=about (last visited on Jan. 22, 2026).

[3] Devereux Advanced Behavioral Health, Annual Report Fiscal Years 2022-23, 42 (2023), https://online.flipbuilder.com/oqtv/ypnf/ (last visited on Jan. 22, 2026).

Devereux's data if Devereaux did not pay within 10 days. A screenshot of the post on the dark web of the attack was circulated on the Internet as shown below:[4]



17.    Devereux subsequently posted a "Notice of Data Breach" on its website, which reflects that "[t]he categories of information that may be involved varies [sic] by individual, but could include some combination of name, demographic information, clinical information, and financial information."[5]

18.    Devereux has not disclosed any further information regarding the Data Breach, which is inimical to its patients' interests. Devereux should be required to disclose why PII and PHI were stored on systems without adequate security, the deficiencies in the security systems that permitted unauthorized access, whether the data was encrypted or otherwise protected, and what Devereux knows about the degree to which the data has been disseminated.

---

[4] FalconFeeds.io, X.com, https://x.com/FalconFeedsio/status/1994408987404669031 (last visited Jan. 22, 2026).

[5] Notice of Data Event, https://www.devereux.org/site/SPageServer/?pagename=data_notice_2025 (last visited Jan. 22, 2026).

19.    Without such disclosure, questions remain as to the full extent of the Data Breach, the actual data accessed and compromised, and what measures, if any, Devereux has taken to secure the PII and PHI still in its possession. Plaintiff seeks to determine the scope of the Data Breach and the information involved, obtain relief that redresses the harm to Plaintiff's and Class Members' interests, and ensure that Devereux has proper measures in place to prevent similar incidents from occurring in the future.

**Devereux's Security Representations**

20.    Devereux has a Notice of Privacy Practices that outlines the information that it maintains and its promises to keep Plaintiff's and Class Members' data safe.[6]

21.    Devereux collects PII and PHI including treatment for drug and alcohol abuse, HIV status, psychotherapy notes, payment and billing information, and other information used for quality assessment, and to conduct training for their employees.[7]

22.    Devereux states that it is "required by law to maintain the privacy and security of your protected health information."

23.    Devereux also has a separate Internet Safety Policy where it promises to protect unauthorized access to Plaintiff's and Class Members' data in compliance with the Children's Internet Protection Act.[8]

_____

[6] Notice of Privacy Practices, Devereux Advanced Behavioral Health, http://www.devereux.org/site/DocServer/NOPP_-_Notice_of_Privacy_Practices_1.pdf (last visited Jan. 22, 2026).

[7] *Id*.

[8] Internet Safety Policy, Devereux Advanced Behavioral Health, https://www.devereux.org/site/SPageServer/?pagename=ir_eratesecurity (last visited Jan. 22, 2026).

24.     Specifically, Devereux claims that its security practices "(a) prevent user access over its computer network to, or transmission of, inappropriate material via the Internet, electronic mail, or other forms of direct electronic communications; (b) prevent unauthorized access and other unlawful online activity; (c) prevent unauthorized online disclosure, use, or dissemination of personal identification information of minors; and (d) comply with the Children's Internet Protection Act (CIPA)."

25.     Devereux promises that it will prevent "inappropriate network usage include[ing]: (a) unauthorized access, including so-called 'hacking,' and other unlawful activities; and (b) unauthorized disclosure, use, and dissemination of personal identification information regarding minors."

26.     According to Devereux's Privacy Policy, its website also collects first and last names, street addresses, telephone numbers, email addresses, IP addresses, and other information voluntarily submitted by the visitor to the website.[9]

27.     Devereux also promises that they will "let you know promptly if a breach occurs that may have compromised the privacy or security of your information."[10] To date, Devereux has not notified Plaintiff or Class Members of the breach.

### The Healthcare Sector is a Primary Target for Data Breaches

28.     Devereux was on notice that companies in the healthcare industry are susceptible targets for data breaches.

---

[9] Privacy Policy, Devereux Advanced Behavioral Health, https://www.devereux.org/site/SPageServer/?pagename=privacy (last visited Jan. 22, 2026).

[10] Notice of Privacy Practices, Devereux Advanced Behavioral Health, http://www.devereux.org/site/DocServer/NOPP_-_Notice_of_Privacy_Practices_1.pdf (last visited Jan. 22, 2026).

29.     Devereux was also on notice that the Federal Bureau of Investigation has been concerned about data security in the healthcare industry. On April 8, 2014, the FBI's Cyber Division issued a Private Industry Notification to companies within the healthcare sector, stating that "the health care industry is not technically prepared to combat against cyber criminals' basic cyber intrusion tactics, techniques and procedures (TTPs), much less against more advanced persistent threats (APTs)" and pointed out that "[t]he biggest vulnerability was the perception of IT healthcare professionals' beliefs that their current perimeter defenses and compliance strategies were working when clearly the data states otherwise." The same warning specifically noted that "[t]he FBI has observed malicious actors targeting healthcare-related systems, perhaps for the purpose of obtaining Protected Health Information (PHI) and/or PII."[11]

30.     The number of reported North American data breaches increased by over 50 percent in 2021, from 1,080 in 2020[12], to 1,638 in 2021.[13] As a recent report reflects, "[h]ealthcare has increasingly become a target of run-of-the-mill hacking attacks and the more impactful ransomware campaigns."[14]

---

[11] Health Care Systems and Medical Devices at Risk for Increased Cyber Intrusions for Financial Gain (Apr. 8, 2014), FBI Cyber Division Private Industry Notification (available at https://info.publicintelligence.net/FBI-HealthCareCyberIntrusions.pdf) (last visited Jan. 22, 2026).

[12] See Verizon 2021 Data Breach Investigations Report, at 97, https://www.verizon.com/ business/resources/reports/2021-data-breach-investigations-report.pdf (last visited Jan. 22, 2026).

[13] See Verizon 2022 Data Breach Investigations Report, at 83 (available at https://www.verizon.com/ business/resources/reports/2022/dbir/2022-data-breach-investigations-report-dbir.pdf) (last visited Jan. 22, 2026).

[14] *Id*. at 62.

31.     At the end of 2018, the healthcare sector ranked second in the number of data breaches among measured sectors, and had the highest rate of exposure for each breach.[15] Indeed, when compromised, healthcare related data is among the most sensitive and personally consequential. A report focusing on healthcare breaches found that the "average total cost to resolve an identity theft-related incident . . . came to about $20,000," and that the victims were often forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[16] Almost 50 percent of the victims lost their healthcare coverage as a result of the incident, while nearly 30 percent said their insurance premiums went up after the event. Forty percent of the customers were never able to resolve their identity theft at all. Data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy.[17]

32.     Healthcare-related breaches have persisted because criminals see electronic patient data as a valuable asset. According to the 2019 HIMSS Cybersecurity Survey, 82 percent of participating hospital information security leaders reported having a significant security incident in the previous 12 months, with a majority of these known incidents being caused by "bad actors" such as cybercriminals.[18] "Hospitals have emerged as a primary target because they sit on a gold mine of sensitive personally identifiable information for thousands of patients at any given time. From social security and insurance policies, to next of kin and credit cards, no other

---

[15] 2018 End-of-Year Data Breach Report, Identity Theft Resource Center (available at https://www.idtheftcenter.org/2018-data-breaches) (last visited Jan. 22, 2026).

[16] Elinor Mills, Study: Medical identity theft is costly for victims, CNET (March 3, 2010) (available at https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/) (last visited Jan. 22, 2026).

[17] *Id*.

[18] 2019 HIMSS Cybersecurity Survey (available at https://www.himss.org/ sites/hde/files/d7/u132196/2019_HIMSS_Cybersecurity_Survey_Final_Report. pdf) (last visited Jan. 22, 2026).

organization, including credit bureaus, have so much monetizable information stored in their data centers."[19]

33.    The American Medical Association ("AMA") has also warned healthcare companies about the importance of protecting their patients' confidential information:

> Cybersecurity is not just a technical issue; it's a patient safety issue. AMA research has revealed that 83% of physicians work in a practice that has experienced some kind of cyberattack. Unfortunately, practices are learning that cyberattacks not only threaten the privacy and security of patients' health and financial information, but also patient access to care.[20]

34.    The harm done to children and adolescent victims of data breaches in particular is long-lasting. Theft of minors' PHI damages children for years to come in that their identity can be stolen before they even utilize their own credit.[21]

35.    Children have the potential to lose their identities to cybercriminals. Through cyberattacks hackers seize the opportunity to steal children's PII and PHI. This is not only lucrative for hackers, but doing so is hard to detect and prevent. Few people are aware of the problem and the consequences can last decades – "hackers could spen[d] more than a decade

---

[19] Inside Digital Health, How to Safeguard Hospital Data from Email Spoofing Attacks, Apr. 4, 2019 (available at https://www.idigitalhealth.com/news/how-to-safeguard-hospital-data-from-email-spoofing-attacks) (last visited Jan. 22, 2026).

[20] Andis Robeznieks, Cybersecurity: Ransomware attacks shut down clinics, hospitals, Am. Med. Ass'n (Oct. 4, 2019) (available at https://www.ama-assn.org/practice-management/sustainability/cybersecurity-ransomware-attacks-shut-down-clinics-hospitals) (last visited Jan. 22, 2026).

[21] Maggie Hales, *Pediatric PHI Breach Inflicts Lasting Harm*, THE HIPAA E-TOOL, https://thehipaaetool.com/pediatric-phi-breach-inflicts-lasting-harm/ (last visited Jan. 22, 2026).

preying on a child's credit before the fraud is discovered, and by that time, it is possible that repairs will be difficult to make."[22]

36.    According to the "2022 Child Identity Fraud Study" authored by Javelin Strategy & Research, approximately 915,000 children in the United States were victims of identity fraud in 2021, costing an average of $1,128 for a single household and 16 hours of remediation time.[23]

37.    The theft of a child's identity is lucrative to a cyber-criminal because it can remain undetected for years, if not decades. Without regular monitoring, a child's identity that has been stolen may not be discovered until they are preparing to apply for student loans or get their first credit card.[24] Children are less likely to have credit reports than adults in the first place, which means a cybercriminal could establish an entire credit history long before a child realizes that they have been victimized.[25]

38.    As a major healthcare services provider, Devereux knew, or should have known, the importance of safeguarding Plaintiff's and Class Members' PII and PHI entrusted to them and of the foreseeable consequences if that data was disclosed. This includes the significant costs that would be imposed on Plaintiff and Class Members by virtue of a breach. Devereux failed, however, to take adequate cybersecurity measures to prevent the Data Breach.

---

[22] Elise Viebeck, *Why Hackers Want Kids' Personal Information*, THE HILL, https://thehill.com/policy/cybersecurity/242865-why-hackers-want-kids-personal-information/ (last visited Jan. 22, 2026).

[23]*See 1.7 Million U.S. Children Fell victim to Data Breaches, According to Javelin's 2022 Child Identity Fraud Study*, https://javelinstrategy.com/press-release/17-million-us-children-fell-victim-data-breaches-according-javelins-2022-child (last visited Jan. 22, 2026).

[24] Avery Wolfe, *How Data Breaches Affect Children*, AXIOMCYBER, https://web.archive.org/web/20240415083241/https://axiomcyber.com/data-breach/how-data-breaches-affect-children/ (last visited Jan. 22, 2026).

[25] *See Why Hackers Want Kids' Personal Information*, *supra* note 22.

**Devereux Stores Plaintiff's and Class Members' PII and PHI**

39.     Devereux obtained and stored a massive amount of PII and PHI. As a condition of engaging in health care services, Devereux and its affiliates required that patients entrust them with highly confidential PII and PHI.

40.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII and PHI, Devereux assumed legal and equitable duties and knew or should have known that they were responsible for protecting Plaintiff's and Class Members' PII and PHI from disclosure.

41.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and PHI, and relied on Devereux to keep this information confidential and securely maintained, and to make only authorized disclosures of this information.

**PII and PHI are Valuable and Subject to Unauthorized Disclosure**

42.     Devereux was aware that the PII and PHI it collected is highly sensitive and of significant value to those who would use it for wrongful purposes.

43.     PII and PHI are valuable commodities to identity thieves. As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identify theft, and medical and financial fraud.[26] Indeed, a robust illegal market exists in which criminals openly post stolen PII and PHI on multiple underground websites, commonly referred to as the "dark web." PHI can sell for as much as $363 on the dark web, according to the Infosec

---

[26] Federal Trade Commission, What To Know About Identity Theft (available at https://consumer.ftc.gov/articles/what-know-about-identity-theft) (last visited Jan. 22, 2026).

Institute.[27] Moreover, "fullz" packages, which include "extra information about [a] legitimate credit card owner in case" a scammer's "bona fides are challenged when they attempt to use the credit card" are also offered on the dark web.[28]

44.    PHI is particularly valuable because criminals can use it to target victims with frauds and swindles that take advantage of the victim's medical conditions or victim settlements. It can be used to create fake insurance claims, allowing for the purchase and resale of medical equipment, or gain access to prescriptions for illegal use or resale.

45.    Medical identity theft can result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's PHI is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[29]

46.    The ramifications of Devereux's failure to keep Plaintiff's and Class Members' PII and PHI secure are long-lasting and severe. Once PII and PHI are stolen, fraudulent use of

---

[27] Center for Internet Security, Data Breaches: In the Healthcare Sector (available at https://www.cisecurity.org/blog/data-breaches-in-the-healthcare-sector/) (last visited Jan. 22, 2026).

[28] Stolen PII & Ramifications: Identity Theft and Fraud on the Dark Web, Armor (Apr. 3, 2018), https://res.armor.com/resources/blog/stolen-pii-ramifications-identity-theft-fraud- dark-web/ (last visited Jan. 22, 2026).

[29] Michael Ollove, The Rise of Medical Identity Theft in Healthcare, Kaiser Health News (Feb. 7, 2014) (available at https://khn.org/news/rise-of-indentity-theft/) (last visited Jan. 22, 2026).

that information and damage to victims may continue for years. Fraudulent activity might not show up for months or even years thereafter.

47.    Further, criminals often trade stolen PII and PHI for years following a breach. Cybercriminals can post stolen PII and PHI on the internet, thereby making such information publicly available.

48.    Approximately 21% of victims do not realize their identity has been compromised until more than two years after it happens. [30] This gives thieves ample time to seek multiple treatments under the victim's name. Forty percent of consumers found out they were a victim of medical identity theft only when they received collection letters from creditors for expenses that were incurred in their names.[31]

49.    Devereux knew, or should have known, the importance of safeguarding PII and PHI entrusted to them and of the foreseeable consequences if their data security systems were breached. This includes the significant costs that would be imposed on Plaintiff and Class Members because of a breach. Devereux failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

**The Data Breach Exposed Plaintiff and Class Members
to Identity Theft and Out-of-Pocket Losses**

50.    Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of their rights. They are incurring and will continue to incur such damages in addition to any fraudulent use of their PII and PHI.

---

[30] See Medical ID Theft Checklist (available at https://www.identityforce.com/blog/medical-id-theft-checklist-2) (last visited Jan. 22, 2026).

[31] Experian, The Potential Damages and Consequences of Medical Identity Theft and Healthcare Data Breaches (available at https://www.experian.com/assets/data-breach/white-papers/consequences-medical-id-theft-healthcare.pdf) (last visited Jan. 22, 2026).

51.     Despite all the publicly available knowledge of known and foreseeable consequences of the disclosure of PII and PHI, Devereux's policies and practices with respect to maintaining the security of Plaintiff's and Class Members' PII and PHI were reckless, or at the very least, negligent.

52.     In virtually all contexts, the expenditure of time has consistently been recognized as compensable, and for many people, it is the basis on which they are compensated. Plaintiff and Class Members should be compensated for the time they have expended because of Devereux's misfeasance.

53.     Once PII and PHI are stolen, fraudulent use of that information and damage to victims may continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud.[32]

54.     As a result of the wide variety of injuries that can be traced to the Data Breach, Plaintiff and Class Members have and will continue to suffer financial loss and other actual harm for which they are entitled to damages, including, but not limited to, the following:

   a.   invasion of privacy;

   b.   theft of their PII and PHI;

   c.   lost or diminished value of their PII and PHI;

   d.   lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach;

   e.   loss of the benefit of their bargain;

---

32     2014 LexisNexis True Cost of Fraud Study (available at https://www.lexisnexis.com/risk/downloads/assets/true-cost-fraud-2014.pdf) (last visited Jan. 22, 2026).

     f.    lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach;

     g.   statutory damages;

     h.   nominal damages; and

     i.   the continued and certainly increased risk to their PII and PHI, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Devereux's possession and is subject to further unauthorized disclosures so long as Devereux fails to undertake appropriate and adequate measures to protect the PII and PHI.

**Devereux's Lax Security Violates HIPAA**

55.    Devereux had a non-delegable duty to ensure that all PHI it collected and stored was secure.

56.    Devereux is bound by HIPAA (*see* 45 C.F.R. § 160.102) and, as a result, is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

57.    These rules establish national standards for the protection of patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider. See 45 C.F.R. § 160.103.

58.    HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information."

59.    HIPAA requires that Devereux implement appropriate safeguards for this information.

60.    Despite these requirements, Devereux failed to comply with its duties under HIPAA and their own Privacy Practices. In particular, Devereux failed to:

    a.  maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

    b.  adequately protect Plaintiff's and Class Members' PHI;

    c.  ensure the confidentiality and integrity of electronic PHI created, received, maintained, or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

    d.  implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. § 164.312(a)(1);

    e.  implement adequate policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1)(i);

    f.  implement adequate procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports, in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

    g.  protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 C.F.R. § 164.306(a)(3);

h.  ensure compliance with the electronic PHI security standard rules by their workforce, in violation of 45 C.F.R. § 164.306(a)(4); and/or

i.  train all members of their workforce effectively on the policies and procedures with respect to PHI as necessary and appropriate for the members of their workforce to carry out their responsibilities and to maintain security of PHI, in violation of 45 C.F.R. § 164.530(b)

61.    Devereux failed to comply with its duties under HIPAA despite being aware of the risks associated with unauthorized access to Plaintiff's and Class Members' PHI.

**Devereux Violated FTC Guidelines**

62.    The Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, prohibited Devereux from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' PII is an "unfair practice" in violation of the FTC Act. *See, e.g., Fed. Trade Comm'n v. Wyndham Worldwide Corp*., 799 F.3d 236 (3d Cir. 2015).

63.    The FTC has promulgated several guides for businesses that reflect the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[33]

---

[33] Federal Trade Commission, Start With Security: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf) (last visited Jan. 22, 2026).

64.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established data security guidelines for businesses.[34] The guidelines reflect that businesses should protect the PII that they keep; properly dispose of PII that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

65.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to confidential data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[35]

66.     The FTC has brought enforcement actions against businesses for failing to protect customer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

67.     Devereux failed to properly implement basic data security practices. Devereux's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' PII and PHI constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

---

[34] Federal Trade Commission, Protecting Personal Information: A Guide for Business (available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf) (last visited Jan. 22, 2026).

[35] FTC, Start With Security, *supra*.

68.    Devereux was at all times fully aware of its obligation to protect Plaintiff's and Class Members' PII and PHI because of its position as a healthcare provider. Devereux was also aware of the significant repercussions that would result from its failure to do so.

**Plaintiff's Experience**

69.    Plaintiff Dawn Williams' four minor children have recently been treated at a Devereux facility.

70.    Devereux obtained Ms. Williams' children's PII and PHI in the course of conducting its regular business operations.

71.    At the time of the Data Breach, Devereux retained Ms. Williams' children's PII and PHI.

72.    In December of 2025, Ms. Williams received four copies of the same letter from Devereux, each one addressed to one of her children. That letter disclosed that the "following types of information may have been exposed for some individuals:

- Name, address, date of birth, and other contact information and personally identifiable information

- Medical record numbers and/or health insurance information

- Diagnosis and treatment information

- Social Security numbers, prescription information, lab results"

73.    Ms. Williams greatly values her children's privacy and is very careful about sharing their sensitive PII and PHI. Ms. Williams diligently protects her children's PII and PHI, takes proactive steps to ensure that their PII and PHI are kept safe and secure, and stores any documents containing their PII and PHI in a safe and secure location. She has never knowingly transmitted unencrypted sensitive PII or PHI over the Internet or any other unsecured source.

74.     Devereux obtained and continues to maintain Mr. Fisher's children's PII and PHI and has a continuing legal duty and obligation to protect that PII and PHI from unauthorized access and disclosure.

75.     The Data Breach has caused Ms. Williams' children to suffer imminent and impending injury arising from the substantially increased risk of additional future fraud, identity theft, and misuse resulting from their PII and PHI being placed in the hands of criminals.

76.     As a result of the Data Breach, Ms. Williams' children are at present risk and will continue to be at increased risk of identity theft and fraud for years to come.

77.     Ms. Williams' children have a continuing interest in ensuring that their PII and PHI, which, upon information and belief, remain backed up in Devereux's possession, are protected and safeguarded from future breaches.

## CLASS ACTION ALLEGATIONS

78.     This civil action is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), as applicable, and (c)(4). Plaintiff seek certification of the following class:

> All persons in the United States and its territories whose PII and/or PHI was compromised in the Data Breach.

79.     Excluded from the Class are Devereux, any entity in which Devereux has a controlling interest, and Devereux's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff.

80.     Plaintiff reserve the right to modify or amend the definition of the proposed Class as additional information becomes available to Plaintiff.

81.     **Numerosity:** The Class Members are so numerous that individual joinder of all Class Members is impracticable. Upon information and belief, the number of individuals whose

PII and PHI was exposed by Devereux is at a minimum several thousand. All Class Members'
names and addresses are available from Devereux's records, and Class Members may be notified
of the pendency of this action by recognized, Court-approved notice dissemination methods.

82. **Commonality:** There are questions of law and fact common to the Class, which
predominate over any questions affecting only individual Class Members. These common
questions of law and fact include, without limitation:

    a.  Whether and to what extent Devereux had a duty to protect the PII and PHI of
        Class Members;

    b.  Whether Devereux was negligent in collecting and storing Plaintiff's and Class
        Members' PII and PHI;

    c.  Whether Devereux had duties not to disclose the PII and PHI of Class Members to
        unauthorized third parties;

    d.  Whether Devereux took reasonable steps and measures to safeguard Plaintiff's
        and Class Members' PII and PHI;

    e.  Whether Devereux failed to adequately safeguard the PII and PHI of Class
        Members;

    f.  Whether Devereux failed to implement and maintain reasonable security policies
        and practices appropriate to the nature and scope of the PII and PHI compromised
        in the Data Breach;

    g.  Whether Devereux adequately, promptly, and accurately informed Plaintiff and
        Class Members that their PII and PHI had been compromised;

    h.  Whether Plaintiff and Class Members are entitled to actual damages, statutory
        damages, and/or punitive damages because of Devereux's wrongful conduct;

i.   Whether Plaintiff and Class Members are entitled to restitution because of Devereux's wrongful conduct;

j.   Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm they face because of the Data Breach; and

k.   Whether Plaintiff and Class Members are entitled to identity theft protection for their respective lifetimes.

83.   **Typicality:** Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII and PHI, like that of every other Class Member, was disclosed by Devereux. Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through Devereux's common misconduct. Plaintiff are advancing the same claims and legal theories individually and on behalf of all other Class Members, and there are no defenses that are unique to Plaintiff. Plaintiff's claims and Class Members' claims arise from the same operative facts and are based on the same legal theories.

84.   **Adequacy:** Plaintiff are adequate representatives of the Class because Plaintiff are members of the Class and are committed to pursuing this matter against Devereux to obtain relief for the Class. Plaintiff have no conflicts of interest with the Class. Plaintiff's counsel are competent and experienced in litigating class actions, including extensive experience in data breach litigation. Plaintiff intend to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

85.   **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Devereux has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members, and making final injunctive relief appropriate

with respect to the Class as a whole. Devereux's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Devereux's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

86.    **Superiority:** Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Devereux. Even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

87.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Devereux would necessarily gain an unconscionable advantage in non-class litigation, since Devereux would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by Class Members and will establish the right of each Class Member to recover on the causes of action alleged; and

individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

88.    The litigation of Plaintiff's claims is manageable. Devereux's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with maintenance of this lawsuit as a class action.

89.    Adequate notice can be given to Class Members directly using information maintained in Devereux's records.

90.    Unless a class-wide injunction is issued, Devereux may continue to maintain inadequate security with respect to the PII and PHI of Class Members, Devereux may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Devereux may continue to act unlawfully as set forth in this Complaint.

91.    Devereux has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate.

## COUNT I
## NEGLIGENCE AND NEGLIGENCE *PER SE*
### (on behalf of Plaintiff and the Class)

92.    Plaintiff re-alleges and incorporates by reference herein all the allegations contained in the preceding paragraphs.

93.    Devereux knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' PII and PHI, and had a duty to exercise reasonable care in safeguarding, securing and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. That duty included, among other things, designing, maintaining, and testing Devereux's security protocols to ensure that Plaintiff's and

Class Members' PII and PHI in Devereux's possession was adequately secured and protected, that Plaintiff's and Class Members' PII and PHI on Devereux's networks was not accessible to criminals without authorization, and that Devereux's employees tasked with maintaining such information were adequately trained on security measures regarding the security of Plaintiff's and Class Members' PII and PHI.

94.    Plaintiff and Class Members entrusted their PII and PHI to Devereux with the understanding that Devereux would safeguard their information, use their PII and PHI for business purposes only, and not disclose their PII and PHI to unauthorized third parties.

95.    Devereux knew or reasonably should have known that a failure to exercise due care in the collecting, storing, and using Plaintiff's and Class Members' PII and PHI involved an unreasonable risk of harm to Plaintiff and Class Members.

96.    Devereux also had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiff's and Class Members' PII and PHI.

97.    A breach of security, unauthorized access, and resulting injury to Plaintiff and Class Members was reasonably foreseeable, particularly in light of prior data breaches and disclosures prevalent in today's digital landscape.

98.    Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Devereux knew or should have known of the inherent risks in collecting and storing Plaintiff's and Class Members' PII and PHI, the critical importance of providing adequate security of that information, the necessity for encrypting PII and PHI stored on Devereux's systems, and that it had inadequate IT security protocols in place to secure Plaintiff's and Class Members' PII and PHI.

99.     Devereux's misconduct created a foreseeable risk of harm to Plaintiff and Class Members. Devereux's misconduct included, but was not limited to, failure to take the steps and opportunities to prevent the Data Breach as set forth herein.

100.    Plaintiff and Class Members had no ability to protect their PII and PHI that was in Devereux's possession.

101.    Devereux was in a position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

102.    Devereux had, and continues to have, a duty to timely disclose that Plaintiff's and Class Members' PII and PHI within its possession was compromised and precisely the type(s) of information that were compromised.

103.    Devereux had a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's and Class Members' PII and PHI.

104.    Devereux systematically failed to provide adequate security for data in its possession.

105.    Devereux, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' PII and PHI within its possession.

106.    Devereux, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff's and Class Members' PII and PHI.

107.    Devereux, through its actions and/or omissions, unlawfully breached its duty to timely disclose to Plaintiff and Class Members that the PII and PHI within its possession might have been compromised and precisely the type of information compromised.

27

108.    Devereux's breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' PII and PHI to be compromised.

109.    But for all of Devereux's acts of negligence detailed above, including allowing cyber criminals to access its systems containing Plaintiff's and Class Members' PII and PHI would not have been compromised.

110.    Plaintiff never transmitted her children's unencrypted PII and PHI over the internet or any other unsecured source.

111.    Following the Data Breach, Plaintiff's PII and PHI has been seized by unauthorized third parties who are now free to exploit and misuse that PII and PHI, and Plaintiff is unable to prevent its further dissemination. Plaintiff's PII and PHI are forever compromised.

112.    But for the Data Breach, Plaintiff's children would not have incurred the loss and publication of their PII and PHI and other injuries.

113.    There is a close causal connection between Devereux's failure to implement security measures to protect Plaintiff's and Class Members' PII and PHI and the harm suffered, or risk of imminent harm suffered by Plaintiff and Class Members. Plaintiff's and Class Members' PII and PHI were accessed and compromised as the proximate result of Devereux's failure to exercise reasonable care in safeguarding such PII and PHI by adopting, implementing, and maintaining appropriate security measures and encryption.

114.    Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, loss of privacy, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII and PHI.

115.    As a result of Devereux's negligence and breach of duties, Plaintiff and Class Members are in danger of imminent harm in that their PII and PHI, which are still in the possession of third parties, will be used for fraudulent purposes.

116.    In addition, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by entities such as Devereux for failing to use reasonable measures to protect PII and PHI. Various FTC publications and orders also form the basis of Devereux's duty.

117.    Devereux violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and PHI and not complying with the industry standards. Devereux's conduct was particularly unreasonable given the nature and amount of PII and PHI it obtained and stored and the foreseeable consequences of a data breach involving that PII and PHI.

118.    Plaintiff and Class Members are consumers within the class of persons Section 5 of the FTC Act was intended to protect.

119.    Devereux's violation of Section 5 of the FTC Act constitutes negligence *per se*.

120.    Devereux is an entity covered under HIPAA which sets minimum federal standards for privacy and security of PHI.

121.    Pursuant to HIPAA, 42 U.S.C. § 1302d, *et. seq.*, and its implementing regulations, Devereux had a duty to implement and maintain reasonable and appropriate administrative, technical, and physical safeguards to protect Plaintiff's and the Class Members' electronic PHI.

122.    Specifically, HIPAA required Devereux to: (a) ensure the confidentiality, integrity, and availability of all electronic PHI it creates, receives, maintains, or transmits; (b) identify and protect against reasonably anticipated threats to the security or integrity of the electronic PHI; (c) protect against reasonably anticipated, impermissible uses, or disclosures of

the PHI; and (d) ensure compliance by their workforce to satisfy HIPAA's security requirements. 45 C.F.R. § 164.102, *et. seq*.

123. Devereux violated HIPAA by actively disclosing Plaintiff's and Class Members' electronic PHI and by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PHI.

124. Plaintiff and Class Members are patients within the class of persons HIPAA was intended to protect.

125. Devereux's violation of HIPAA constitutes negligence *per se*.

126. The harm that has occurred as a result of Devereux's conduct is the type of harm that the HIPAA was intended to guard against.

127. Plaintiff seeks the award of actual damages on behalf of herself and the Class.

128. Plaintiff seeks injunctive relief on behalf of the Class in the form of an order (1) compelling Devereux to institute appropriate data collection and safeguarding methods and policies with regard to PII and PHI; and (2) compelling Devereux to provide detailed and specific disclosure of what types of PII and PHI have been compromised as a result of the data breach.

## COUNT II
## BREACH OF EXPRESS CONTRACT
### (on behalf of Plaintiff and the Class)

129. Plaintiff re-alleges and incorporates by reference herein all the allegations contained in the preceding paragraphs.

130. Plaintiff and Class Members entered into valid and enforceable contracts through which they paid money to Devereux in exchange for services. Those contracts included promises by Devereux to secure, safeguard, and not disclose Plaintiff's and Class Members' PII and PHI.

131.    Devereux's Notice of Privacy Practices memorialized the rights and obligations of Devereux and its affiliates' patients. This document was, upon information and belief, provided to Plaintiff and Class Members in a manner in which it became part of the agreement for services..

132.    In the Notice of Privacy Practices, Devereux commits to protecting the privacy and security of PII and PHI and promises to never share Plaintiff's and Class Members' PII and PHI except under certain limited circumstances.

133.    Plaintiff and Class Members fully performed their obligations under their contracts with Devereux.

134.    However, Devereux did not secure, safeguard, and/or keep private Plaintiff's and Class Members' PII and PHI. Devereux therefore breached its contracts with Plaintiff and Class Members.

135.    Devereux allowed third parties to access, copy, and/or exfiltrate Plaintiff's and Class Members' PII and PHI without permission. Devereux therefore breached its Privacy Policy as it pertained to Plaintiff and Class Members.

136.    Devereux's failure to satisfy its confidentiality and privacy obligations, specifically those arising under the FTCA, HIPAA, and applicable industry standards, diminished the value of the services Devereux provided to Plaintiff and Class Members.

137.    As a result, Plaintiff and Class Members have been harmed, damaged, and/or injured as described herein, including by Devereux's failure to fully perform its part of its bargain with Plaintiff and Class Members.

138.    As a direct and proximate result of Devereux's conduct, Plaintiff and Class Members suffered and will continue to suffer damages in an amount to be proven at trial.

31

## COUNT III
## <u>UNJUST ENRICHMENT</u>
### (on behalf of Plaintiff and the Class)

139.    Plaintiff re-alleges and incorporates by reference herein all the allegations contained in the preceding paragraphs.

140.    Plaintiff and Class Members have an interest, both equitable and legal, in their PII and PHI that was conferred upon, collected by, and maintained by Devereux and that was stolen in the Data Breach.

141.    Devereux benefitted from the conferral upon it of Plaintiff's and Class Members' PII and PHI, and by its ability to retain and use that information. Devereux understood that it so benefited.

142.    Devereux also understood and appreciated that Plaintiff's and Class Members' PII and PHI was private and confidential and that its value depended upon Devereux maintaining its privacy and confidentiality.

143.    But for Devereux's willingness and commitment to maintain its privacy and confidentiality, that PII and PHI would not have been transferred to and entrusted with Devereux. Further, if Devereux had disclosed that its data security measures were inadequate, Devereux would not have been permitted to continue in operation by regulators and the financial marketplace.

144.    As a result of Devereux's wrongful conduct as alleged in this Complaint (including, among other things, its failure to employ adequate data security measures, its continued maintenance and use of Plaintiff's and Class Members' PII and PHI without having adequate data security measures, and its other conduct facilitating the theft of that PII and PHI), Devereux has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members.

145.    Devereux's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compilation and use of Plaintiff's and Class Members' sensitive PII and PHI, while at the same time failing to maintain that information secure from intrusion and theft by hackers.

146.    Under the common law doctrine of unjust enrichment, it is inequitable for Devereux to be permitted to retain the benefits it received, and is still receiving, without justification, from the use of Plaintiff's and Class Members' PII and PHI in an unfair and unconscionable manner. Devereux's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

147.    The benefit conferred upon, received, and enjoyed by Devereux was not conferred officiously or gratuitously, and it would be inequitable and unjust for Devereux to retain the benefit.

**COUNT IV**
**INJUNCTIVE/DECLARATORY RELIEF**
**(on behalf of Plaintiff and the Class)**

148.    Plaintiff re-alleges and incorporates by reference herein all the allegations contained in the preceding paragraphs.

149.    Devereux owes a duty of care to Plaintiff and Class Members requiring it to adequately secure PII and PHI.

150.    Devereux still stores Plaintiff's and Class Members' PII and PHI.

151.    Since the Data Breach, Devereux has announced no specific changes to its data security infrastructure, processes, or procedures to fix the vulnerabilities in its computer systems and/or security practices which permitted the Data Breach to occur and, thereby, prevent similar incidents from occurring in the future.

152.    Devereux has not satisfied its legal duties to Plaintiff and Class Members.

153.    Actual harm has arisen in the wake of the Data Breach regarding Devereux's duties of care to provide security measures to Plaintiff and Class Members. Further, Plaintiff and Class Members are at risk of additional or further harm due to the exposure of their PII and PHI, and Devereux's failure to address the security failings that led to that exposure.

154.    Plaintiff, therefore, seeks a declaration: (a) that Devereux's existing security measures do not comply with its duties of care to provide adequate security; and (b) that to comply with its duties of care, Devereux must implement and maintain reasonable security measures, including, but not limited to, the following:

    a.  ordering that Devereux engage third-party security auditors as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Devereux's systems on a periodic basis, and ordering Devereux to promptly correct any problems or issues detected by such third-party security auditors;

    b.  ordering that Devereux engage third-party security auditors and internal personnel to run automated security monitoring;

    c.  ordering that Devereux audit, test, and train its security personnel regarding any new or modified procedures;

    d.  ordering that Devereux segment PII and PHI by, among other things, creating firewalls and access controls so that if one area of Devereux's system is compromised, hackers cannot gain access to other portions of Devereux's system;

    e.  ordering that Devereux purge, delete, and destroy in a reasonably secure manner PII and PHI that are not necessary for its provision of services;

    f.  ordering that Devereux conduct regular computer system scanning and security checks; and

    g.  ordering that Devereux routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, prays for relief as follows:

a. for an Order certifying the Class as defined herein, and appointing Plaintiff and her counsel to represent the Class;

b. for equitable relief enjoining Devereux from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PII and PHI, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

c. for equitable relief compelling Devereux to use appropriate cybersecurity methods and policies with respect to PII and PHI collection, storage, and protection, and to disclose with specificity to Class Members the types of PII and PHI compromised;

d. for an award of damages, including actual, nominal, consequential, enhanced compensatory, and punitive damages, as allowed by law in an amount to be determined;

e. for an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

f. for prejudgment interest on all amounts awarded; and

g. such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: January 23, 2026                     Respectfully submitted,


_____*/s/ Bart D. Cohen*_____
Bart D. Cohen (PA Bar No. 57606)
Panida A. Anderson (*pro hac vice* forthcoming)
**BAILEY GLASSER LLP**
1055 Thomas Jefferson Street NW
Suite 540
Washington, DC 20007
(202) 463-2101
bcohen@baileyglasser.com
panderson@baileyglasser.com

Marc H. Edelson (PA Bar No. 51834)
Liberato P. Verderame (PA Bar No. 80279)
**EDELSON LECHTZIN LLP**
411 S. State Street, Suite N300
Newtown, PA 18940
(215) 867-2399
medelson@edelson-law.com
lverderame@edelson-law.com

*Attorneys for Plaintiff and the Proposed Class*